THE OREGON STEAMSHIP COMPANY, Respondent, *v.* GEORGE K. OTIS, Appellant.

The provision of the Federal statutes (U. S. R. S., § 3963), prohibiting a contractor for carrying the mails between the United States and a foreign country from assigning his contract and declaring any assignment or transfer thereof void, does not, where the contractor is in fact an agent for another, operate to annul the agency or to vitiate his liability to the principal, so far at least, as money actually received by the former under the contract is concerned; and an action against him is maintainable by the principal to recover the same.

The presumption is that letters, mailed to a person directed to him at his place of residence, were received by him.

Where a witness testifies that he sent letters to a person directed to him at his place of residence, *held*, that, in the absence of any proof or inquiry upon cross-examination, as to the mode of sending, it is to be presumed that they were mailed in the usual manner.

The same presumption (in kind if not in degree) as to the receipt of letters applies to telegrams proved to have been delivered to a telegraph company for transmission, properly directed to the correspondent at his place of residence or where he is shown to have been at the time ; and where the correspondent is a witness in the case, and does not deny the receipt of the telegram, the presumption becomes strong and convincing.

While the transcript of the message delivered to the person addressed is for some purposes, as between him and the sender, to be deemed the original, to make it so there must be competent proof that the alleged sender did actually send or authorize it to be sent.

The primary evidence of this is the telegram itself delivered to the telegraph company. Where it appears this has been destroyed by the company, secondary evidence may be resorted to.

Where it appeared that the original telegrams had been thus destroyed, and that the message received was in a cipher agreed upon between the parties, and the sender as a witness did not deny the authenticity of the telegrams, *held*, that the proof was sufficient.

As to other telegrams claimed to have been sent by the same person, it was proved that the person receiving them subsequently mailed letters to the sender, which stated the receipt of the telegrams and substantially their contents. *Held*, that the letters called for a denial if the messages were not in fact sent, and the omission of such a denial, or of an explanation of his silence by the alleged sender when called as a witness, amounted to an admission that he did send them.

Other telegrams, purporting to come from the same sender, contained directions to draw for specific sums of money. It was proved that drafts were drawn in accordance with the instructions, which were paid by the

drawee and credited to him; the correctness of the account he did not dispute. *Held,* that in the absence of denial, a *prima facie* case was made of the genuineness of the dispatches which justified their receipt in evidence.

(Argued October 19, 1885 ; decided November 24, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 22, 1883, which modified, and affirmed as modified, a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought to recover a balance of moneys in defendant's hands, alleged to have been received by him on contracts with the United States government for the transportation of the mails from San Francisco to Portland, Oregon, which contracts plaintiff alleged, although entered into by defendant in his own name, were in fact made by him as agent for plaintiff.

The facts, so far as material, are stated in the opinion.

*John R. Abney* for appellant. There was error in admitting in evidence the telegrams upon the mere statement that the witness received them. (*Tabor* v. *Van Tassel,* 87 N. Y. 643 ; *Bullis* v. *Montgomery,* 50 id. 359 ; *Howley* v. *Whipple,* 48 N. H. 487, 490; *National Bk.* v. *National Bk.,* 7 W. Va. 544; *Smith* v. *Easton,* 54 Md. 138.) A party's self-serving declarations cannot be put in evidence in his own favor. (2 Whart. on Ev., § 1101 ; 19 La. Ann. 91.) The acts done by one party after the completion of the contract, in furtherance of his understanding it, cannot bind the other party, nor are they admissible in aid of the construction of the contract. (*Stockham* v. *Stockham,* 32 Md. 196.) The test, whether a demand connected with an illegal transaction can be enforced at law, is, whether the plaintiff requires the aid of the illegal transaction to establish his case. (*Armstrong* v. *Taber,* 11 Wheat. 258 ; *Ogden* v. *Barker,* 18 Johns. 87 ; *Seidenbender* v. *Charles,* 4 S. & R. 150; *Swan* v. *Scott,* id. 155 ; *Hipple* v. *Rice,* 28 Penn. St. 406 ; *Simpson* v. *Bloss,* 4 Taunt. 246.) No claim or

defense can be maintained that requires the aid of an illegal agreement of the party in support of his case. (Leake on Cont. 771; *Thomson* v. *Thomson*, 7 Ves. 470.) It makes no difference that all the illegal parts have been performed. (*Hope* v. *Hope*, 22 Beav. 351.) The government could not maintain an action on this contract against the plaintiff. (*Cagin* v. *Lovell*, 109 U. S. 194.) If an original agreement of partnership be disputed, it cannot be established in a court of law. (Leake on Cont. 777; *Knowles* v. *Haughton*, 11 Ves. 168; *Ewing* v. *Osbaldwin*, 2 M. & Cr. 80; *Crosier* v. *Acer*, 7 Pai. 137; *Pratt* v. *Adams*, id. 616.)

*George H. Adams* for respondent. This court will not review the question whether Otis, when bidding for and taking the mail contract, was acting as the agent or in behalf of the plaintiff. (*Pope* v. *Allen*, 90 N. Y. 298.) It was competent to prove a former relation of principal and agent, not for the purpose of proving a present or continuing similar relation, but "for the purpose of aiding in the interpretation of the communications, written and oral, between the plaintiff and the defendant." (*Richards* v. *Millard*, 56 N. Y. 574, 581.) Proof of the sending of a letter by mail raises the presumption of its receipt by the addressee, and for the same reasons telegrams are now held to be subject to the same rule. (Whart. on Ev., §§ 76, 617, 1128, and notes; *Trotter* v. *McLean*, L. R., 13 Ch. Div. 574; *Rosenthal* v. *Walker*, 111 U. S. 193; *U. S.* v. *Babcock*, 3 Dill. 573; *Breed* v. *Bank*, 5 Cal. 235; Scott & Jarnagan on Telegraphs, §§ 340, 341; Allen's Telegraph Cases, *passim*; *Howley* v. *Whipple*, 48 N. H. 487; *Dunning* v. *Roberts*, 35 Barb. 471; *Trevor* v. *Woods*, 36 N. Y. 307; *Durkee* v. *Vermont R. R. Co.*, 28 Vt. 127.) The notice to produce was sufficient to authorize the admission of the telegrams, although it may have been presumed that the papers called for were in the possession of the telegraph company. (*Burton* v. *Payne*, 2 C. & P. 520.) This court will not review the determination of the referee as to the sufficiency of the testimony of loss or destruction of papers constituting best

evidence, and the admission of secondary evidence. (*Mason* v. *Libbey*, 90 N. Y. 683.) The omission of Otis to show the facts as to the sending and receipt of the communications in question which were peculiarly within his own knowledge, and thus to repel the inference to be drawn from the plaintiff's evidence, serves only to strengthen such inference. (*Adams* v. *Davidson*, 10 N. Y. 309 ; *Wylde* v. *Northern R. R. Co.*, 53 id. 156, 164.) Under all the circumstances, and there being not a shadow of doubt that the papers objected to came from defendant, and the resistance to their reception being hardly commendable, the court should hold the appellant strictly to the grounds of his objection, and if the plaintiff was not called upon to prove that appellant actually " wrote or sent " the identical exhibits read in evidence, but was required only to trace them actually or presumptively to the appellant, the objection should be disregarded. (*McColloch* v. *Hoffman*, 73 N. Y. 615.)

FINCH, J. The referee has found that the defendant's contract with the government to transport the mails between San Francisco and Portland, Oregon, though made in his own name as contractor, was in reality made by him as agent for and in behalf of the plaintiff company which actually performed the service ; that the compensation paid him, as between himself and the plaintiff, belonged to the latter, except that out of it Otis was entitled to retain a commission for his agency; that he in fact retained and refused to pay over a much larger sum, for the conversion of which he was sued, with the result of a recovery against him. The evidence was sufficient to warrant the conclusion of the referee upon the facts; but assuming them as they have been found, the appellant seeks to defend upon the contention that his agreement of agency was void because in contravention of the Federal law, which makes it legally impossible for a contractor to sell or transfer or assign his contract for the transportation of the mails. We do not think that fact could operate to annul the agency, or vitiate the liability to the plaintiff, so far as the money actually received was concerned. By section 3954 of

the U. S. Revised Statutes it is made a misdemeanor for the bidder to refuse to enter into the contract and perform the contracted service. Otis did enter into the contract, and, as between him and the government, did perform the service and receive the stipulated pay. By section 3963 it is provided that the contractor shall not assign or transfer his contract, and such assignment or transfer shall be void. Otis made no assignment or transfer. As between him and the government he remained contractor, and gave to nobody any right through or under him against the employer. That did not prevent him from holding the contract for the benefit of the company which performed the service, and agreeing to collect and hold the pay for it and as its property when received. That was the agreement which the referee found was made, and it violated neither the letter nor spirit of the law. The obvious aim of the enactment was to prevent a liability of the government upon the contract to any person but the accepted bidder. That object was accomplished. What became of the money when earned and paid was immaterial to the employer, and Otis might, as he did, put himself in the attitude of an agent for the defendant company as between them. This question does not appear by the record to have been specifically raised, and it is quite probable that the exceptions were too general and ambiguous to present it for review. But it seems to have been considered and discussed in the courts below, and so we have thought it best to dispose of it here.

But other and very serious questions were raised by objections taken to the admission in evidence of a large number of letters and telegrams. Many of these documents were important in their bearing upon the facts, and must have largely contributed to the ultimate result. They consisted of three letters from Norris, plaintiff's agent and manager at San Francisco, to defendant Otis, and one from Otis to Norris; and then of a large number of telegrams; and the objections were that as to those purporting to be addressed to the defendant there was no competent evidence that he ever received the originals; and as to those purporting to have been signed by

him, that there was no competent evidence that he ever wrote or sent them.  Our consideration must be limited to these precise objections, and to the question as between sender and receiver.

Norris swears that he sent the three letters written by him to Otis.  In the absence of any proof to the contrary, or any inquiry as to the mode, we must understand this to mean that they were mailed in the usual manner.  If there was doubt about that the attention of Norris should have been drawn to it, and the manner of transmission challenged.  It would be extremely critical to deny to the form of expression used by the witness its ordinary and usual interpretation, because it might have been more precise and explicit, in a case where the party addressed is examined as a witness, and does not deny the receipt of the letters, although material to the issue.  On such a state of facts the jury were authorized to believe that the three letters sent to Otis were received by him.  The one letter sent by Otis to Norris was identified by the latter, who knew his correspondent's handwriting, as appears by the deposition.  Notice to produce the letters of Norris was given, and not being produced, copies of them were read in evidence.

But there is more difficulty about the telegrams.  The originals were shown to have been destroyed by the telegraph company, so that a resort to secondary evidence became necessary. We shall first consider the proof as to those sent by Norris. It consisted merely of his statement that he sent the messages by telegraph to Otis, who resided in New York, directed to him at that city.  Such direction appears upon the copies produced.  And the first question is, whether a similar presumption of fact follows the delivery of a message, properly addressed, to the telegraph company for transmission, to that which follows the delivery of a letter to the post-office.  The drift of authority gives an affirmative answer.  (Gray on Telegraphs, § 136; *Commonwealth* v. *Jeffries*, 7 Allen, 548; Whart. on Ev., § 76; *State* v. *Hopkins*, 50 Vt. 316; Scott & Jarnagin on Tel., § 345.)  The presumption indulged is one of fact,

and so, open to rebuttal and contradiction, and consists merely in the natural inference which may be drawn from the experienced certainty of transmission. The great bulk of letters sent by mail reach their destination, and equally so the great bulk of telegrams. A failure in either case is an exception; possible, but rare. The letters are transported by government officials acting under oath, and upon a system framed to secure regularity and precision: the telegrams by private corporations, whose success and prosperity depend largely upon the promptness and accuracy of the work, and are faithful under the incentive of interest. These companies perform a public service and are regulated to some extent by the public law. They are authorized to cross with their wires any waters within the limits of the State (Laws of 1845, chap. 243); to construct their lines along and upon the public roads and highways (Laws of 1848, chap. 265); and upon and over the lands of individuals, paying the agreed or appraised compensation therefor (Laws of 1853, chap. 471); injury to their lines is made a misdemeanor (Laws of 1870, chap. 491); the companies are required to transmit all dispatches in the order of their receipt; to accept and forward them from connecting lines; the operators are exempt from military service and jury duty (Laws of 1861, chap. 215); and it is made a misdemeanor for any employe to divulge the nature or contents of a private telegram, or willfully refuse or neglect to transmit or deliver the same (Laws of 1867, chap. 871). There is thus impressed upon the telegraph service something of a public character, and thrown around it the guard and the obligations of the public law, and it seems to us reasonable to assimilate the rules of evidence founded upon transmission by mail to that of transmission by telegraph. It may be that the presumption of correct delivery, agreeing in kind with that raised upon delivery to the post-office, should be deemed weaker in degree, but in view of the wide extension of telegraph facilities and of their increasing use in business correspondence, and the difficulty of tracing a dispatch to its destination, we think it should be held that upon proof of delivery of the message for the purpose of

transmission, properly addressed to the correspondent at his place of residence, or where he is shown to have been, a presumption of fact arises that the telegram reached its destination, sufficient at least to put the other party to his denial, and raise an issue to be determined. Here there was no denial, and the presumption, however weak at the outset, became strong and convincing. There is greater safety in conceding the existence of such a presumption of fact under a system like ours, in which the party addressed is always at liberty to testify, and if dead his representatives are protected against the evidence of his adversary as to personal transactions and communications.

We turn now to the telegrams alleged to have been sent by Otis. While the transcript delivered to the person addressed is for some purposes, as between him and the sender, deemed the original, it never can be so without competent proof that the alleged sender did actually send, or authorize to be sent, the dispatches in question. The primary and original evidence of that fact would be the telegram itself in the handwriting of the sender, or of an agent shown to have been duly authorized. But when it appears that the telegram has been destroyed by the company, secondary evidence of the essential fact may be given. The General Term have put great stress upon the circumstance that when on the witness stand the defendant did not dispute the authenticity of the telegrams, and thence reasoned that if improperly admitted at first, they became competent afterward. There is much of force in the argument, but we think there was some evidence of genuineness of a different character. ·Exhibit 4 is in an agreed cipher which identifies it with a certainty at least equal to that of a proved handwriting. Exhibits 8, 9 and 10 were not objected to. They refer to No. 7, asserting that it was received from Otis, and reciting its substantial contents. They are followed by No. 11. These two — 7 and 11 — purport to have come from Otis, and their material point is a claim by him for salary in addition to commissions. Now No. 14 and No. 20 are letters from Norris to Otis which he presumably received, and never disputed,

either by an answer or on the witness stand.    Those letters re-
cite the receipt of Otis' previous telegrams, claiming a salary
·in addition to commissions, and paying that claim under pro-
test by draft inclosed.    If he had not sent these dispatches,
the letters required of him a denial, or at least an explanation
of his silence when called as a witness.    He did neither, and
hence the receipt of the letters and the omission to challenge
their recitals amount to an admission that he did send Exhibits
7 and 11.    No. 21 is verified by the letter of Otis, No. 22.
Exhibits 5, 6, 29, 30 and 31 purport to be directions from Otis
to Norris to draw for specific sums of the mail pay.    Their ·
importance lies in their amounts as excluding a deduction for ·
salary, or making that deduction.    Putnam, who was cashier
and book-keeper, testifies that defendant resided in New York
city; would telegraph to Norris to draw for specific sums;
that such drafts were drawn and paid, and the amounts entered
to Otis' credit in the books.    In each case the payment of the
draft would verify to Putnam the genuineness of Otis' tele-
gram to draw, and these telegrams Putnam delivered to Norris,
who produced them.    The credits on the books corresponding
with the telegram amounts went into the account, the correct-
ness of which Otis does not dispute, but only denies that he is
liable at all.    These facts furnish some evidence that Otis did
send the telegrams in question.    Exhibit 26 is a refusal to pay
a specific draft and is made immaterial by what follows.    No.
27 was from Norris and verifies No. 23 as sent by Otis.    There
remain Exhibits 3, 15, 17, 18 and 28, covered by the objection,
and these seem to us entirely immaterial, and bearing in no
degree upon the questions litigated beyond what is sufficiently .
established by other competent proof.    There was thus some
evidence presented to the court, without objection to its char-
acter when given, tending to prove that Otis did send the tele-
grams purporting to be signed by him.    It was claimed after-
ward not to be competent, but so far as the case shows, it was
the best evidence attainable, and no specific objection was made
that there was better evidence, and no facts proved indicating
it.    The court held that a *prima facie* case was made of the

Statement of case.

genuineness of the dispatches as having emanated from Otis, and that being so, the transcripts delivered to Norris became admissible in the absence of any objection to their accuracy as copies, or to the correctness of their transmission. So far then as the telegrams were material, we think there was no error in their admission. That they were in truth authorized and genuine became in the end most thoroughly established by Otis' omission to dispute them as a witness.

Some other questions of evidence were raised which we have examined, but deem it unnecessary to discuss.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.