## PRESUMPTION AS TO MANNER OF MAILING A LETTER.

Circuit Court of Cuyahoga County.

THE FARMERS' MILL & GRAIN COMPANY v. ANTONIO DE FRANCO.

Decided, October 26, 1906.

*Mailing Letter—What Presumed.*

When a witness says that he mailed a letter, in the absence of any inquiry as to the mode in which he mailed it, it will be presumed that he mailed it in accordance with the regulations of the post office department.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

This case comes on error to the court of common pleas. Suit was brought by the mill company, that is the Farmers' Mill &

Grain Company, designated herein as the mill company, against Antonio De Franco, upon a petition in the usual short form: that upon two hundred barrels of flour at $3.70, less the freight, which was shipped from North Dakota to this city, the freight amounting to $121.40, $618.60 was payable.

De Franco filed an answer and cross-petition, and before the case went to trial he twice amended it; so that when the case went to trial it was upon the petition, the second amended answer and cross-petition and the reply.

The cross-petition sets out that on the 14th day of October, 1903, a contract was entered into between the plaintiff and the defendant, whereby the defendant purchased from the plaintiff four thousand barrels of macaroni flour, at $3.70 per barrel f.o.b. cars at Cleveland, Ohio, to be shipped in installments of two hundred barrels at a time, every fourteen days; that payment was to be made upon the several shipments not more than ten days after arrival. The contract sets out further that payment was to be made by drafts to be drawn by the plaintiff upon the defendant, and defendant says that no draft for the installment sued for, was ever made; he says that the plaintiff shipped nine installments in all and eight were paid for; the installments of flour were not sent every fourteen days nor were the payments always made within the ten days specified by the contract, but from time to time installments of two hundred barrels were forwarded and payments made from time to time, and nobody made serious complaint as to the time of shipping the flour or the time of payment, up to the shipping of the ninth installment.

The defendant says in his cross-petition that the plaintiff notified him on the 1st of August, 1904, that he canceled the contract, and that flour had advanced very considerably in price and that, thereby, he lost a very large amount and that he lost because of the cancellation by the plaintiff of the contract.

To that answer and cross-petition the plaintiff replied. It admits that on the 16th of June, 1904, the ninth installment was shipped from North Dakota; that is the installment sued for in the action; it admits, then, that this suit is brought for the price

of the flour thus shipped, and that said shipment was to the defendant.    It admits that said flour was received, but says that not being informed of its shipment, that the same was not received until the 15th day of July, 1904.

Proceeding to answer the cross-petition, the plaintiff says that on the 16th of June, 1904, the shipment was made; it admits that said defendant received the same but denies that the date the defendants received the same is correctly set forth; it further admits that no further shipment would be made by it to the defendant, since the shipment of the  16th of June, and denies each and every other allegation contained in the cross-petition.

The first negotiation in reference to a contract for this flour was on the 14th day of June, 1903, and was between the Wright Brothers, a brokerage firm in this city, and the defendant. The Wright Brothers took an order from De Franco for four thousand barrels of Macaroni flour to be shipped by the plaintiff to De Franco, and forwarded that order to the plaintiff in North Dakota.    Thereupon the secretary of the company at North Dakota wrote the following letter to De Franco:

"MILNOR, NORTH DAKOTA, Oct. 19, '03.
"A. DE FRANCO,
    "Cleveland, Ohio.
    "Dear Sir: You have placed an order with us, through the Wright Brothers, No. 20 Cheshire St. of your city, under the following conditions as we understand it.   We are to book your order for four thousand barrels of macaroni straight flour, at $3.70 per barrel, f.o.b. cars Cleveland, all rail, shipment, in 98 pounds, jute or cotton, the order is conditioned upon the first car of two hundred barrels which is to be shipped on or about the 24, inst., proving satisfactory.   If these goods are such as you desire, the balance of the order you are to receive in shipments of car load lots of two hundred barrels each every fourteen days. It is understood, of course, that the standard quality of the first car is to be maintained in subsequent shipments. You are to pay for these goods within ten days from the arrival of the car at Cleveland.   In case the first car does not prove satisfactory you are privileged to cancel the entire remaining thirty eight hundred barrels of the order.

"Please advise so that we may know that your understanding and ours of the contract are the same.

"Yours truly,
"F. W. VAIL,
"*Sec. & Treas.*"

To that letter De Franco answered on the 31st of October, in the following words:

"CLEVELAND, OHIO, Oct. 31st, 1903.
"THE FARMERS MILL & GRAIN CO.,
"Milnor, North Dakota, .
"*Dear Sirs:* I understand that you ship the car of flour the 24th inst., of October, and I am out of flour; so send it as soon as you can. The contract is alright.

"Yours truly,
"A. DE FRANCO."

When that answer was made the contract was completed between these parties. It will be seen that by that contract, the flour was to be shipped every fourteen days, in installments of two hundred barrels, and the payments were to be made not later than ten days after the arrival of the flour.

The result of the trial in the court below was, that the evidence having all been submitted, the court, on motion of plaintiff, instructed the jury that the defendant was not entitled to recover on his cross-petition and that the company was entitled to recover the amount sued for in its petition, and directed a verdict accordingly, and that verdict was rendered, and by proper proceeding the case is here for review.

The evidence shows that on the 9th of November the first installment was shipped. De Franco received that flour, and a letter was written on the same day of the shipment by the mill company to De Franco, which letter reads:

"MILNOR, NORTH DAKOTA, Nov. 9, '03.
"A. DE FRANCO,
"Cleveland, Ohio.
"*Dear sir:* Please find here B. L. of C. G. W. Car No. 16,-852, in which we have shipped you two hundred barrels of macaroni straight flour. We enclose invoice herein. You are to take credit for the freight charge, and remit us the balance. We

trust that the goods will arrive promptly and prove all that you expect.

"Yours truly,
"F. W. VAIL,
"Sec. & Treas."

Thereafter shipments were made as has already been said from time to time, and payments made by draft after deducting the freight, not made upon draft drawn on De Franco as he has set up in his cross-petition, for, in no instance so far as appears, did they draw on him, but he sent a draft for whatever the bill was, deducting the freight and remitting the balance, and nothing further need be said on his defense as far as that feature is concerned.

On the 16th of June, as has already been said, the last shipment was made. Up to that time there had been no suggestion on the part of either plaintiff or defendant, that the contract was rescinded because of the failure of either party to perform it in its exact force; neither that the payments must be made within the ten days after the receipt of the flour, but they had continued to ship it right along.

On the 16th of June, when the last shipment was made, a letter which I will now read, was written:

"MILNOR, NORTH DAKOTA, June 16, '04.
"A. DE FRANCO,
"Cleveland, Ohio.
"*Dear Sir:* Please find herein invoice of load of Sunrise shipped you this day, loaded out in N. P. car No. 18145, B. L. of shipment is also enclosed. Please send us check for goods on arrival. Let us know about when you will want the next carload shipped out. We were a little slow in this shipment as the roads were impassible and the farmers could not bring the grain in, owing to a very rainy Spring.

"Yours truly,
"F. W. VAIL,
"Sec. & Treas."

Up to this time the mill company had no thought of cancelling this contract because the payments had not been made, because in this letter they asked when De Franco will want another

shipment. De Franco says he answered that letter on the 20th of June and that his answer was in these words (he testifies it was sent then):

"Cleveland, Ohio, June 20, 1904.
"The Farmers' Mill & Grain Co.,
    Milnor, North Dakota.
"*Dear Sirs:* We received your letter of the 16th and you say when we want next car of flour; send the next car the way the contract reads.
                    "Yours truly,
                        "A. De Franco."

Now he testifies that that letter was mailed to the mill company by him. It should be said that on the 1st of August the mill company wrote a letter to DeFranco which reads:

"Milnor, North Dakota, Aug. 1, 1904.
"A. De Franco,
    "Cleveland, Ohio.
"*Dear Sir:* Owing to the fact that you have not filled your contract with us in the matter of making remittance for goods which were shipped you from time to time properly, ten days after arrival of the goods, the last shipment having been made you on the 15th day of June and no remittance having been made by you, you are hereby notified that our contract with you is canceled and no further shipments will be made. We regret that such action on our part becomes necessary. We have called your attention to this matter a number of times before. You can not but realize that we can not do business indefinitely in this way, and our only course is to make no further shipments.
                    "Yours truly,
                        "F. W. Vail,
                            "*Sec. & Treas.*"

Various letters passed between the parties before and after, but it is not deemed necessary to call attention to them here. The notice that the contract was canceled by the mill company was written on the 1st of August. By the terms of the contract, shipments were to be made every fourteen days; they were not to be paid for until ten days after the goods were received. The last shipment was made on the 16th of June; it could not have arrived in Cleveland in time to give De Franco ten days in which to remit before the 30th of June, which would be four-

teen days thereafter.   If De Franco sent his letter on the 20th of June and it was received by the mill company, the mill company should have sent on the 30th of June another installment of flour because he asks for it, and, if they received from him the letter which he says he sent to them, then they were in default before he was in default.   But it is said that the testimony in regard to this letter furnishes no evidence that the letter was ever received by the mill company; the secretary and treasurer of the mill company says it never was received.   DeFranco's testimony in regard to the matter is that he mailed the letter to the mill company.   He does not say that he put a postage stamp upon it; he does not say what words it had upon it; his testimony, found on page 53 of the bill of exceptions, is this:

"You say you answered the letter of June 16th?   A.  Yes sir.

"Q.   Now, in what way did you prepare the letter, in typewriting or writing   A.  Typewriting.

"Q.   How soon after, to the best of your recollection, did you get this letter from them (indicating)?   A.  Well, a few days after.

"Q.   Did you write the letter yourself?   Or some person else?  A.  My son wrote it for me.

"Q.   Did you see him write it?   A.  Yes sir.

"Q.   What did you do with letter after it was written?   A.  Why I mailed it.

"Q.   Have you a copy of that letter?   A.  Yes sir."

Now this is the testimony as to the mailing of the letter. And it is said that this is not such testimony as raises a presumption that the letter was ever received, because it does not appear that a postage stamp was ever put on the letter.   We think there was evidence sufficient as to the mailing of this letter, and we call attention to the case of *Brooks, Borden & Ford* v. *Day*, in 11th Ia., page 46, the opinion in which is very short and reads as follows:

"The defendant brings this cause upon a single question. His bill of exceptions shows that he objected to the introduction in evidence of the notary's protest which accompanied the note, upon the ground that the notary's certificate did not affirmatively show, that when he addressed through the post office a

notice to the defendant of the presentation and non-payment of the note, that he paid the postage on the same. The objection was overruled and exceptions taken at the time, and now is renewed in this court. We concur in the opinion of the court below, and will presume that the notary public sending such a notice by mail, conformed to the established regulations of the post office department.''

We call attention also to the case of *The Oregon Steamship Co.* v. *Otis*, 53 Am. Rep., 221. The same case is also found in 100 N. Y., 222, the syllabus of which I will read:

''In the absence of any proof to the contrary, or any inquiry as to the mode, we must understand this to mean that they were mailed in the usual manner.''

Now, in this case, there is a denial by the secretary and treasurer of the mill company, that the letter was received, but the question should have been left to the jury as to whether the letter was received. The court below should not have taken the defendant's case from the jury on his cross-petition. The language used by the witness was that he mailed the letter. If there be given to these words their ordinary significance, it means that he put the letter in the post office and that it was addressed in the usual way; and as already said, if the jury came to the conclusion upon all the evidence that the letter was received, then before the remittance for the last installment could have reached them, they should have forwarded another installment. And for this error in directing the jury to return a verdict against the defendant on his cross-petition the judgment of the court below is reversed and the case remanded for new trial.