## MONTGOMERY v. UNITED STATES. †

(Circuit Court of Appeals, Eighth Circuit. January 4, 1915.)

### No. 4137.

**1. CRIMINAL LAW ☞400—BEST AND SECONDARY EVIDENCE—TELEGRAMS.**

Primary evidence of the contents of a telegram is the original message or admissions of the sender, while secondary evidence may consist of a copy proved to be correct or an oral account of the contents of the message by one who has seen it, and knows its contents; it being necessary to account for the absence of primary evidence before secondary evidence is admissible.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 879–886, 1208–1210; Dec. Dig. ☞400.]

**2. CRIMINAL LAW ☞400—EVIDENCE—TELEGRAMS—ORIGINAL.**

Where the government sought to prove a telegram alleged to have been sent by accused as an incriminating circumstance, the message filed at the sending office would be the original, and proof of its loss or destruction was required before secondary evidence of its contents was admissible.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 879–886, 1208–1210; Dec. Dig. ☞400.]

**3. CRIMINAL LAW ☞402—EVIDENCE—COPY OF TELEGRAM—CORROBORATION.**

In a prosecution for causing the transportation in interstate commerce of two women for immoral purposes, one of them testified that accused told her that he wired A. to meet them at G. The other woman testified that accused said A. would meet them at the train, and A. testified that she received a telegram like the copy of the one offered in evidence, but that it was unsigned, and that she did in fact meet the women as directed. *Held*, that the copy of the telegram found in the files of the receiving office was admissible, not by reason of its own probative quality, but in corroboration of and in connection with the testimony of the women, though the absence of the original was not accounted for.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 887, 888; Dec. Dig. ☞402.]

**4. CRIMINAL LAW ☞1156—REVIEW—DISCRETION—GROUNDS FOR NEW TRIAL.**

Misconduct of a juror and newly discovered evidence alleged as ground for new trial are not reviewable.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3067–3071; Dec. Dig. ☞1156.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Rehearing denied March 19, 1915.

In Error to the District Court of the United States for the District of Wyoming; John A. Riner, Judge.

Roy Montgomery was convicted of having caused the transportation in interstate commerce of two women for immoral purposes, and he brings error. Affirmed.

William S. Metz, of Sheridan, Wyo. (Carl L. Sackett, of Sheridan, Wyo., and Gibson Clark, of Cheyenne, Wyo., on the brief), for plaintiff in error.

David J. Howell, Asst. U. S. Atty., of Cheyenne, Wyo. (Charles L. Rigdon, U. S. Atty., of Cheyenne, Wyo., on the brief), for the United States.

Before CARLAND, Circuit Judge, and T. C. MUNGER and YOUMANS, District Judges.

CARLAND, Circuit Judge. Montgomery was tried, convicted and sentenced for having on February 12, 1911, caused the transportation in interstate commerce of two women from Denver, Colo., to Gillette, Wyo., for the purpose of there engaging in the practice of prostitution. At the trial the prosecution offered in evidence a paper which contained the following language:

"Denver, Colo., Feb. 12, 1911.

"To Ollie Allen, Gillette, Wyo.: Meet two girls at train forty-one tomorrow. Leaving tonight for home.    Roy Montgomery."

To which offer counsel for Montgomery made the following objection:

"We object to the introduction of the paper for the reason that the same is wholly incompetent, irrelevant, and immaterial, and for the reason that it is not the original, and that it is not the best evidence and not properly identified."

The court ruled as follows:

"You can offer proof that the original is lost, and this is a true copy. The objection is overruled."

This ruling of the court is assigned as error. At the time this paper was offered, one of the women had testified that Montgomery told her in Denver that he had wired Ollie Allen to meet them at the train. The other woman had testified that Montgomery said Ollie Allen would meet them at the train. Thomas D. Harper, special agent, department of justice, Elwood Anderson, county attorney, John W. Hanson, and George Roe, had testified that on the night of May 16, 1913, they had gone to the express office, adjoining the Western Union Office at Gillette, and secured a number of packages of the files of the telegraph company and took them to a little house or cabin on the edge of the town; that they investigated these files and found therein what the witness called an original telegram, of which the paper offered in evidence was a true copy made by the witness Anderson; that after making the copy the files were returned to the place where they were obtained.

Earl C. Reed, operator for the Western Union at Gillette, at the time of the trial, which was in November, 1913, had testified that he

had made a search among the files in his office and could not find a telegram like the one offered in evidence; that the entire file of telegrams for the month of February, 1911, was gone; that, so far as the witness knew, the telegrams had been destroyed in the ordinary and regular course of business. After the paper was admitted in evidence, Montgomery testified that he never sent such a telegram, and Ollie Allen, the person to whom the telegram purported to be addressed, testified that she received a telegram like the one offered in evidence, but that it was unsigned; that she did meet the women at the train.

If the admissibility of the paper offered in evidence depended upon proof by the employés of the Western Union at Denver that Montgomery filed the telegram there for transmission, or upon proof by the same employés at Gillette that such a telegram was received at that office, then its admission in evidence was clearly erroneous, as there was no testimony from said employés that any such telegram was filed at 'Denver or received at Gillette.

[1] The contents of telegrams are proved either by primary or secondary evidence. Primary evidence is the original telegram itself or the admissions of the sender. Secondary evidence of a telegram may consist of a copy proved to be correct or an oral account of the contents by one who has seen it and knows its contents. Before secondary evidence, however, may be received, the absence of the primary evidence must be satisfactorily accounted for.

[2] In the practical application of this rule, for the proof of the contents of telegrams, it must first be determined which is the original, the message sent or the one received. This, as a general rule, is determined by ascertaining whether the contents of the telegram sent or that of the one received are in issue. In suits between the immediate parties to telegrams, the telegram received is often the original. In suits against the telegraph company for damages for failure to send a telegram correctly or at all, the original would be the telegram sent. Scott & Jernigan, Law of Tel. par. 341; Gray on Com. by Tel. par. 128; 1 Whart. on Ev. par. 76; Reg. v. Regan, 16 Cox's Cr. Cas. 203; Smith v. Easton, 54 Md. 138, 39 Am. Rep. 355; U. S. v. Babcock, 3 Dillon, 571; Abernathy & Co. v. Hewlett, 2 Willson, Civ. Cas. Ct. (Tex.) App. § 805; Steamship Co. v. Otis, 100 N. Y. 446, 3 N. E. 485, 53 Am. Rep. 221; Barons et al. v. Brown, 25 Kan. 410; Commonwealth v. Jeffries, 7 Allen (Mass.) 548, 83 Am. Dec. 712.

Confining ourselves to the case at bar, we think that under the rule above stated, and in view of the fact that the prosecution was endeavoring to charge Montgomery with having sent a certain telegram, the original would be the one filed at the Denver office. There was no proof whatever of the loss or destruction of this telegram so as to admit secondary evidence of its contents.

[3] We think, however, that counsel for Montgomery failed to give sufficient force to other testimony that appears in the record. The testimony of one of the women that Montgomery told her that he had wired Ollie Allen to meet them at the train at Gillette was primary evidence that Montgomery did send such a telegram. The testimony of the other women, to the effect that Montgomery said Ollie Allen would

meet them at the train, bears upon the same question. With this testimony in the record a copy of the telegram, which was found in the files of the receiving office at Gillette, was admissible, not by reason of its own probative quality, but in corroboration of and in connection with the testimony given by the woman, to the effect that Montgomery had told her that he had wired Ollie Allen just such a telegram.

The question when the paper was offered in evidence was whether there was a sufficient foundation prima facie to admit it; the court not undertaking to determine whether Montgomery in fact sent it. After the paper was admitted, it was then a question for the jury on all the testimony, including that of Montgomery and Ollie Allen, to determine whether Montgomery sent the telegram. We are clearly of the opinion that on the whole record there was no error in admitting the paper complained of. In the recent case of Johnson v. United States, 215 Fed. 679, 131 C. C. A. 613, there was no direct evidence adduced to establish the authenticity of certain telegrams. The Court of Appeals, however, decided that from evidence in the case the jury were warranted in finding that the defendant was the author of the messages.

[4] The only other errors urged in the argument are the misconduct of the juror Walker, and newly discovered evidence. These questions arose on a motion for a new trial, which was addressed to the discretion of the trial court. The ruling of a trial court on such a motion is not reviewable here.

It results that the judgment must be affirmed.

And it is so ordered.