CITY OF OTTUMWA, Appellee, v. MCCARTHY IMPROVEMENT CO. et al., Appellants.

**APPEAL AND ERROR:** Abstract—Preparation—Who Must Supply
1 **Omitted Evidence.** Appellant, in the preparation of his abstract, may include, and is presumed to include, the evidence which *he* deems material to the full consideration of all questions on appeal. Appellee cannot, even by a denial that appellant's abstract contains all the evidence, compel appellant to supply omitted evidence which *he* (appellee) deems material.

LADD AND PRESTON, JJ., dissent.

PRINCIPLE APPLIED: On appeal, a material question was whether the defendant had been notified of a defective pavement, as a condition precedent to his liability for the cost of reconstruction. On the trial, certain letters from plaintiff to defendant were introduced, which letters plaintiff claimed established such notice. Judgment was rendered against defendant. On appeal, defendant (appellant) did not abstract the contents of these letters. Plaintiff (appellee) specifically denied ''that the abstract with these letters omitted contained all the evidence,'' *but did not supply the letters in an amended abstract. Held*, appellee, by his failure to supply the evidence, adopted appellant's theory that their contents were not material to the consideration of any question on appeal.

**TELEGRAPHS AND TELEPHONES:** Evidence—Presumption of Delivery—When. No presumption of ''delivery'' arises from the naked fact that a telegram properly addressed and signed is found in the files of a telegraph company.

PRINCIPLE APPLIED: The court makes this observation: ''There was no evidence of how or for what purpose the supposed telegram came into the company's possession, nor that the requisite fee was paid, nor that it was sent.''

**APPEAL AND ERROR:** Evidence—Improper Reception—Failure to Include in Abstract—Effect. It is futile to ask the court to declare that the improper reception of evidence was prejudicial, when appellant has not favored the court with a showing of the substance or contents of such evidence. So *held* in reference to the improper reception of a non-abstracted telegram.

**MUNICIPAL CORPORATIONS:** Paving—Notice to Reconstruct—Subsequently Accruing Damages—Non-Necessity for Second Notice. Where a paving contractor was entitled to notice of the defective condition of paving as a condition precedent to liability for cost of reconstruction, *held*, one notice was all-sufficient, even though, subsequent to the giving of such notice, and after the city commenced reconstruction work, additional damage was done by an unusual storm.

**MUNICIPAL CORPORATIONS:** Paving, Etc.—Performance Bond—Guarantee Bond—Distinction. The fundamental distinction between (1) a bond conditioned to *perform* the contract, as per specifications, and (2) a bond conditioned to *guarantee* the completed work for a given period, is that, under the former, liability under the bond is foreclosed by a good-faith conclusion and agreement that the work has been done ''as per specifications;'' while under the latter, liability attaches for mistakes, oversights and fraud in the original acceptance, and for hidden and future developing defects.

*Appeal from Wapello District Court.*—D. M. Anderson,
Judge.

Tuesday, January 12, 1915.

Rehearing Denied Monday, October 4, 1915, Supplemental
Opinion. Second Rehearing Denied Thursday,
April 6, 1916.

Action by the city of Ottumwa, on the guaranty bond of
a contractor to repair defects in a pavement during seven
years after being laid, resulted in a judgment as prayed.
The defendant appeals.—*Affirmed.*

*Sharon & Higgins* and *J. J. Smith,* for appellants.

*Lloyd L. Duke,* City Solicitor, and *Tisdale & Heindel,* for
appellee.

Ladd, J.—I.  On August 26, 1904, the McCarthy Improve-
ment Company entered into a contract with the city of
Ottumwa to pave and curb Market Street therein from the
northeast line of Third Street to the southwest line of Fifth
Street, in compliance with instructions, proposals and speci-
fications attached.  In Section 29 of the latter:

"The contractor expressly guarantees to maintain the
pavement in good order for a period of seven years, and binds
himself, his heirs and assigns to make all repairs which may,
from any imperfections in said work or materials, or from any
crumbling or disintegration of the materials, become necessary
in that time, and the said contractor shall, whenever notified
by the city engineer or street committee that repairs are
required, at once make such repairs at his own expense, and
if they are not made within the proper time, the street com-
mittee shall have power to cause such repairs to be made,
and have the costs of the same charged to said contractor, and
deducted from any moneys due under the contract, or that may
afterwards become due; or if in case there be no funds due

the said contractor, then suit shall be instituted against the principal and his sureties for the collection of the said cost of repairs.

"At the end of the seven years' period, the city engineer and street committee must determine whether or not the street is in good order, and the principal and his sureties shall not be discharged from liability on their maintenance bond until the said city engineer or street committee shall certify in writing that said pavement is in good order, natural ordinary wear and tear excepted.

"If at any time during the seven-year period, the pavement or any part of it has deteriorated through neglect in construction or improper material, to such an extent as to require reconstruction, in the opinion of the city engineer and street committee, by the consent of the city council, then upon due notice, or within a period of three months from date of said notice, the contractor shall proceed to reconstruct the pavement, or such part as is deemed necessary as aforesaid.

"If the contractor fails to do so at the end of three months, the street committee may, with the consent of the city council, proceed to reconstruct the pavement, and the cost thereof shall be collected by suit from the said contractor or his sureties.

"There shall be nothing in the above guarantee clause that shall require the contractor to make repairs, or re-lay any pavement made necessary to repair or re-lay by the taking up and re-laying of the same by water, gas, steam or plumbing companies or street railroads, or through any improvements made by the city or by any private parties, of any nature, it being the intention that the contractor shall guarantee his work for the period mentioned, from deterioration caused by improper materials, or neglect in the construction of the same, the ordinary natural wear and tear to be excepted.

"The contractor shall, before beginning work upon the contract, execute to the city of Ottumwa a good and sufficient bond, with sureties approved by the mayor, for the faithful

performance of the requirements of the guarantee clause to the amount of 50 per cent. of the contract price, which bond shall be in addition to the bonds required by law and ordinances of the city of Ottumwa.''

The contractor executed a bond for the faithful performance of the contract, and also a guaranty bond reciting the above conditions and assuring their performance "according to the full spirit and intent thereof and in all particulars," conditioned that—

''If, at any time during the seven-year period aforesaid, the pavement or any part thereof has deteriorated through neglect in construction or improper material to such extent as to require reconstruction, in the opinion of said city engineer and street committee, by the consent of the city council, then upon due notice, or within a period of three months from the time of said notice, the contractor shall proceed to reconstruct the pavement or such part as is deemed necessary as aforesaid.

''If the contractors fail to do so at the end of said three months, the street committee may, with the consent of the city council, proceed to reconstruct the pavement, and the cost thereof shall be collected by suit from the said contractor and surety on this bond.''

The improvements were completed, and this action is on the guaranty bond, begun December 10, 1910, alleging that the improvement company did not keep the streets in repair as agreed, and, as it had failed so to do on notice, this was done by the city, at an expense of $1,552.32. The petition alleged, in substance:

''(a) That the concrete was not of the uniform thickness of six inches, but varied from two inches to six inches; (b) that the sand used was not a clean, sharp sand and free from any appreciable admixture of dust, clay, loam, or vegetable mould, but was a quicksand, and was not suitable for use in such work; (c) that the quantity of cement called for was not used, to wit, one part cement out of seven parts, and that

the cement was not properly mixed; (d) that the work was not done in a good, workmanlike manner; and (e) that, in consequence of these failures to comply with the requirements of the contract and the guarantee bond, the work required repairs and reconstruction.''

The answer was a general denial, and averred: (1) That the work was performed under the supervision of the city engineer; (2) that the plan for paving was defective; (3) that the pavement should not have been taken up for heating, gas and water pipes, and this should not have been allowed; (4) that the quality of cement (Natural American Hydraulic) required by the specifications was poor; (5) that repairs and reconstruction were not required because of poor material or workmanship; (6) that notice requiring repairs or reconstruction was not given; and (7) that the cost to the city for the work done by the city was unreasonable. Appellant contends that the evidence was not sufficient to carry any of these issues to the jury. A careful examination of the evidence has convinced us otherwise, and that the finding of the jury that repairs of the street were required in consequence of defendant's negligence or use of defective materials has such support in the evidence as to preclude interference.

II.   The issue as to whether the contractor had been notified, as exacted in the contract, that the pavement required repairing, before this was done by the plaintiff, was not submitted to the jury. It is said that this was error. It appeared from a letter dated July 29, 1910, and signed by the city engineer, mayor, and chairman of the street committee, that he was advised of the condition of the street and the necessity of repairs, estimating the probable cost at $413. To this, the contractor responded by suggesting ''that the city put in the work, and if we find that the damage to the paving was caused by our negligence, we will reimburse the city for the repairs.'' This obviated any further notice

1. APPEAL AND
   ERROR: ab-
   stract: prepar-
   ation: who
   must supply
   omitted evi-
   dence.

as to the conditions at that time.  There had been a heavy
rainfall on July 28, 1910, a day or two before defendant was
notified; and thereafter, on August 19th, a day or two after
repairing had been begun by the city, there was another heavy
downpour, resulting in additional injury to the pavement.
Appellant contends that the contractor had no notice of the
last injury.  Five letters concerning the condition of Market
Street between Fourth and Fifth Streets, signed by the city
engineer, mayor, and chairman of the street commission, sent
to defendant, were introduced in evidence.  These were not
abstracted, and the plaintiff specifically denied that the
abstract with these omitted contained all the evidence.  In
defendant's amendment to the abstract, the dates of three of
the letters are shown to have been prior to the last rainfall;
and of the other two, the date of one was about August 23,
1910, and of the other, October 7th following.  Only one letter,
dated July 29th, was abstracted, and we have no means of
ascertaining the contents of the last two.  The circumstance
that they were not copied into the transcript, but merely
referred to as exhibits, as is customary, furnished no excuse
for their omission; and the majority of the court are of the
opinion that the denial of appellee did not cast upon the appel-
lants the burden of setting out the letters in an additional
abstract.  The appellee having asserted the omission of said
letters from the appellant's abstract, it was incumbent upon
it, if it deemed said letters material to any issue, to present
the same by way of an amendment to the abstract.  In other
words, the function of a denial is to put in issue the correct-
ness of specific portions of the abstract as printed, but material
portions omitted must be supplied by amendment filed by the
party complaining, the matter to be regulated by the taxation
of costs.  The writer and Preston, J., are of the opinion that
the appellant should not be permitted to thus saddle the labor
and expense of furnishing essential portions of a complete
abstract on the appellee.  They necessarily yield, however, to

the tyranny of numbers. It follows that the appellant cannot. be required to supply omitted portions of the record, as suggested in *Fordyce v. Humphrey*, 152 Iowa 76. Appellee, by omitting to supply letters not abstracted, acquiesced in the conclusion of appellant that these were not essential to a complete understanding of the case, and it is to be assumed that they carried no notice to the defendants of the injury to the pavement occasioned by the second rainfall.

. III. A telegram, addressed to defendant and dated the day after the last storm and signed by the city engineer and the chairman of the street committee, was introduced in. evidence, over objection as "incompetent,.

**2. TELEGRAPHS AND TELE-PHONES: evidence: presumption of delivery: when.** immaterial and because there is no proof of the transmission of the telegram." The local manager of the telegraph company testi-. fied to finding such a telegram in the office

files. How it came there does not appear, nor was there any showing that compensation was paid the company for sending. When a telegram, properly addressed, is delivered to the company, with payment of the fee for transmission, or is shown to have been sent, delivery to the addressee is to be inferred. *Commonwealth v. Jeffries*, 7 Allen (Mass.), 548 (83 Am. D. 712) ; *Perry v. German American Bank*, 53 Neb. 89 (68 Am. St. 593) ; *Oregon Steamship Co. v. Otis*, 100 N. Y. 446 (53 Am. Rep. 221) ; *Eppinger v. Scott*, 112 Cal. 369 (53 Am. St. 220, 223) ; *Western Twine Co. v. Wright* (S. D.), 44 L. R. A. 438 ; 2 Chamberlayne on Ev., Sec. 1069. This rule is analogous to that prevailing with reference to the delivery of letters. The telegraph companies are carriers of intelligence, perform a public service, and are somewhat regulated by law. Sec. 2158 *et seq.*, Code. The great bulk of telegrams are promptly delivered to the sendees; and as this is the usual course, with rare exceptions, the presumption of delivery arises. As was said in *Commonwealth v. Jeffries, supra:*

"No rule of evidence is better settled or more clearly

founded in good sense and sound policy than that which authorizes presumptions or inferences of fact to be deduced from the proof of certain other facts, which, according to the common experience of mankind or the usual course of business, naturally or necessarily lead to the result or conclusion which is sought to be drawn from them. Such presumptions or inferences depend on their own natural force and efficacy in generating a belief or conviction in the mind as derived from those connections which are shown by experience, irrespective of any legal relation. The process of ascertaining one fact from the existence of another is essential to the investigation of truth, and prevails in courts of law, as well as in the ordinary affairs of life, especially in cases where there is a well known and established usage or course of business, and primary evidence of the existence of a fact is wanting or difficult to be obtained. On this ground, the ruling of the court as to the effect of the evidence in question was clearly right. It comes within the principle on which it is held that proof that letters were deposited in the post office, duly directed, is evidence tending to show that they reached their destination and were received by the persons to whom they were addressed.''

In *Perry v. German American Bank, supra:*

''Such presumption results naturally, if not necessarily, from the relation of telegraph companies to the public, which, in this state at least, is held to be that of public carriers of intelligence, with rights and duties analogous to those of carriers of goods and passengers.''

In *Oregon Steamship Co. v. Otis, supra:*

''There is thus impressed upon the telegraph service something of a public character, and thrown around it the guard and the obligations of the public law, and it seems to us reasonable to assimilate the rules of evidence founded upon transmission by mail to that of transmission by telegraph. It may be that the presumption of correct delivery, agreeing in kind with that raised upon delivery to the post office, should

be deemed weaker in degree; but in view of the wide extension of telegraph facilities, and of their increasing use in business correspondence, and the difficulty of tracing a dispatch to its destination, we think it should be held that, upon proof of delivery of the message for the purpose of transmission, properly addressed to the correspondent at his place of residence, or where he has shown to have been, a presumption of fact arises that the telegram reached its destination, sufficient at least to put the other party to his denial and raise an issue to be determined.''

As said, the delivery to the telegraph company for transmission, with the fee required therefor, or the sending of the message, raises the presumption that the telegram was delivered, the strength of such presumption depending on the circumstances of each particular case. But in this case, there was no evidence of how or for what purpose the supposed telegram came into the company's possession, nor that the requisite fee was paid, nor that the telegram was sent, and therefore no basis for the inference of delivery. In *Oregon Steamship Co. v. Otis, supra,* and *Eppinger v. Scott, supra,* evidence that the telegram was sent was held sufficient, without specific proof that it was delivered for transmission or the fee paid, on the theory that these facts were to be implied from the sending; but here, the record is without proof of the sending. It follows that the court erred in not sustaining the objection to this telegram. The ruling, however, cannot be said to have been prejudicial; for the telegram as introduced was not set out in the abstract. Whether the purported copy of a telegram in plaintiff's notice to produce is of that introduced in evidence does not appear. The inference of prejudice cannot be drawn, in the absence of a showing of the contents of the telegram excluded.

3. APPEAL AND ERROR: evidence: improper reception: failure to include in abstract: effect.

IV.   The defendant, then, was not notified of the injury to the pavement consequent on the second rainfall. The jury,

however, was told in substance that the notice such as required by the contract was given. This was on the

**4. MUNICIPAL CORPORATIONS: paving: notice to reconstruct: subsequently accruing damages: non-necessity for second notice.**

theory that any defect in the pavement occasioned by the rain of August 19th and repair thereof was incident to the repair then going on. The evidence disclosed that the contractor had started to make the repairs two days before, and had practically all the brick removed from the street and piled on the side, but had not removed any of the foundation. The rain was unusual. The contractor continued the work and repaired the pavement, including any injury occasioned by the second storm, and the record shows that this was necessary in doing the work, as suggested by the defendant's letter, heretofore quoted. The defects appearing after the second rainfall were merely a continuation of those existing before; and though it then appeared that the expense of repairing would largely exceed the estimate when defendant was first notified, it was essential, in order to make the repairs contemplated. This being so, there was no necessity, under the contract and the correspondence of the parties, for any further notice, and the court was not in error in withdrawing the issue as to notice from the jury.

V.   The contractor executed two bonds, one for the faithful performance of the contract to make the improvement according to the plans and specifications, and the other assuring the guaranty of the improvement for a

**5. MUNICIPAL CORPORATIONS: paving, etc.: performance bond: guarantee bond: distinction.**

period of seven years. The improvements were to be made under the supervision and to the satisfaction of the city engineer and the street committee. This was done, and the improvements accepted by the city council. This was in compliance with the conditions of the first bond, and thereafter, the city, in the absence of fraud, might not, in an action thereon, question performance in conformity with the plans and specifications. Such is the purport of authorities cited

by the appellant, and too numerous for citation. Such approval by its officers is held, in a suit on a bond like the first, in the absence of fraud, to estop the city from asserting otherwise. But the parties in the contract undertook that an additional test should be applied to the work performed and material furnished—that of use and time. The manifest object of this was to obviate any mistake or oversight through negligence or dereliction on the part of representatives of the city, and further assure it of the quality of workmanship and material stipulated. In pavement making, as is well known, it is difficult for the most skillful and experienced expert to discover all defects in material, foundation and other parts of the work as it progresses, and such defects are often slow of development. For this reason, in the advertisement for bids and in the contract, this guaranty bond was exacted. It was authorized by Section 814 of the Code Supplement, 1902, and has been held not to cast on the abutting owner the expenses of ordinary repairs in future, but is merely a guaranty of quality and durability of the improvement. *Osburn v. City of Lyons*, 104 Iowa 160; *Allen v. City of Davenport*, 107 Iowa 90; *Diver v. Keokuk Savings Bank*, 126 Iowa 691. The contractor is merely required to guarantee, in addition to his undertaking to perform according to plans and specifications and to the satisfaction of the officers of the city, that he will make good any defects arising from bad materials or the improper performance of the work during the stipulated period, and the bond is the security for compliance therewith. It is a substitute, as it were, for a condition under which a percentage of the price might be retained by the municipality for the purpose of repairing any defects in the pavement and curbing that might reveal themselves during this lapse of time, and is exacted, not as appellant contends, as a sort of moral inducement or impetus to the contractor to abide by his contract and avoid a breach of the bond to perform in accordance therewith, but to cover future contingencies subsequent to acceptance by the city, and to protect it against those defects

which may have been overlooked or have subsequently developed, regardless of whether they were known to the representatives of the city or not.  Indeed, its purpose is to obviate the miscarriages incident to such improvements, and insure to the city and the abutting owners that for which they have paid, and to exact this from the contractor is no more than insisting on *quid pro .quo.* · No hardship is involved, for defendant was fully advised by the advertisement for bids what would be exacted, and voluntarily executed the contract and bond guaranteeing its work "from deterioration caused by improper materials or neglect in the construction of the same, the ordinary wear and tear" excepted, during a period of seven years; and as against this test of time and use, the action of the city officials in approving the work and accepting it when done furnishes no defense.  The evidence was such as to put in issue whether the condition of the pavement was consequent upon defendant's negligence and defective material, and the instructions were in harmony with the law as herein stated.  The judgment is—*Affirmed.*

All the justices concur, save as appears above.