B. W. Fordyce, Appellant, v. C. H. Humphrey.

Appeal: certification and transcript: time for filing. The certification and filing of the shorthand notes and transcript within six months from the date of entry of the judgment appealed from is timely.

**Same:** CERTIFICATION OF TRANSCRIPT: SUFFICIENCY. A transcript certified to be a full and complete extension of the official report of a trial and as constituting the official transcript of the testimony, with a copy of the certificate of the judge and reporter attached, from which it appears that the proceedings were taken down in shorthand as required by law and that the same contain a full, true and complete record of all the evidence received and offered, with all objections, motions and rulings thereon, shows that the record of the trial has been properly kept and is a sufficient certification of the transcript.

**Same:** ABSTRACT: OMITTED EVIDENCE: REMEDY. The omission of certain evidence from the abstract will not require that all be stricken, as the appellee may specifically deny the correctness of the abstract and thus require the appellant to supply the omitted evidence, or he may himself file a supplemental abstract containing the same.

**Same:** PRESUMPTION AS TO ABSTRACT. In the absence of specific denial or correction of an abstract it will be presumed to contain all the record necessary to enable the appellant court to pass upon every question raised.

**Negotiable instruments:** CONSIDERATION: FRAUD: EVIDENCE. In this action upon a promissory note given in payment for corporate stock, the evidence is reviewed and held insufficient to show that the same was without consideration because obtained upon fraudulent representations concerning the organization of the corporation and the value of its stock.

*Appeal from Taylor District Court.*—HON. H. K. EVANS, Judge.

WEDNESDAY, JUNE 7, 1911.

ACTION on a promissory note, resulting in a judgment for defendant. The plaintiff appeals.—*Reversed.*

*Guernsey, Parker & Miller* and *M. R. Brant,* for appellant.

*W. W. Turner* and *Wisdom & Van Houten,* for appellee.

LADD, J.—I. Appellee moves that the evidence be stricken from the abstract for that neither the transcript nor the notes 'of the shorthand reporter were certified and filed in time. The point is not well taken, for both were duly certified and filed within six months after the entry of judgment. Section 3652, Code; *Dietz v. Capital City Brick & Pike Co.,* 103 Iowa, 542.

1. APPEAL: certi-
fication and
transcript:
time for
filing.

Nor can it be said that the certification of the transcript was insufficient. Therein the judge and reporter certified "that the within and foregoing is a full, true, and complete extension of the official report" of the trial of the cause, and "constitutes the official transcript of the testimony therein." Of course, this alone would be insufficient to prove the record identical with that before the district court. But a copy of the certificate of the judge and reporter attached to the stenographic report of the trial was attached as a part of the transcript, and therein the trial judge and reporter certified, in substance, that the proceedings at the trial were taken down in shorthand as exacted by section 3675 of the Code, and that the stenographic report to which was attached a. full, true, and complete report of all the evidence introduced or offered to be introduced, together with all objections and motions orally interposed and rulings thereon, with exceptions thereto, during the trial, and other matters not necessary to be enumerated. This indicated that the shorthand report had been kept as required by' section 3675, Code, and certified as exacted by section 3652, of the Code as amended, and all that was essential in authenticating the transcript was a certification that it was a full, true, and complete extension of the stenographic report as thus certified. Having certified that the shorthand report of the trial contained all the evidence introduced or offered to be introduced, it was unnecessary to repeat the assertion in certifying to the transcript farther than this was involved in

2. SAME:
certification
of transcript:
sufficiency.

asserting that the extension of the report was full, true, and complete.

Another ground of the motion is that certain evidence was omitted from the abstract. But all the evidence will not be stricken because some of it is not abstracted. The

3. SAME: ab-
stract: omitted
evidence:
remedy.

remedy is either by specifically denying that particular evidence adduced has been abstracted, and thus forcing appellant to supply the omitted evidence or by including it in an additional abstract.

It is said, however, to be demonstrated by appellant's argument that without the omitted evidence a trial *de novo* can not be had. But in the absence of specific denial

4. SAME:
presumption
as to
abstract.

or correction by additional abstract the abstract is conclusively presumed to contain all the record essential to enable the court to pass on every question raised. *McGillivary v. Case,* 107 Iowa, 17; *Woerdehoff v. Muekel,* 131 Iowa, 300; *King v. Hart,* 110 Iowa, 618.

Lastly it is contended that this court is without jurisdiction to hear and determine the cause for that certain evidence referred to in the motion was not preserved and included in the abstract. Enough has been said to disclose that the omission of this particular evidence does not deprive the court of its power to hear and pass on the issues raised by the record. Had appellee desired it in the record, he should have pointed out its omission by a proper denial, thereby enabling appellant to supply the omission, or have done so himself by filing an additional abstract. The motion to strike the evidence is overruled.

II. The suit is on a promissory note of $100 executed

5. NEGOTIABLE
INSTRUMENTS:
consideration:
fraud:
evidence.

by defendant to plaintiff January 27, 1908, payable ten months after date with interest after maturity. The defenses interposed were: (1) That the note was without consideration; (2) that it was given in payment of one share

of the capital stock of Fordyce Crown Dental Company of Bedford, Iowa, which share was never delivered or tendered the defendant and there was no such corporation; (3) that plaintiff represented that said company was a corporation organized under the laws of Iowa; (4) that it owned a valuable patent with the sole right to manufacture and sell the Fordyce crown, an instrument used by dentists in their business; (6) that the actual value of the stock was $100. All these representations were alleged to have been false and so known, and made with intent to deceive an'd defraud plaintiff, and that the latter in executing the note relied thereon, to his damage. Thereafter, to conform the pleadings to the proof, defendant amended his answer by alleging that the corporation mentioned was organized, and $150,000 worth of stock issued, though possessed of no property of intrinsic value; that $100,000 worth of stock was issued to plaintiff without consideration, and that the corporation was organized for the purposes of defrauding those who subscribed for stock. Appellant contends that several defenses are without support in the evidence to which there is no response in argument from appellee. It appears that in the fall of 1907 the plaintiff, with M. R. Brant, of Bedford, Iowa, and James S. Sefree, of Pierre, S. D., organized the Fordyce Crown Dental Company of Bedford, Iowa, as a corporation under the laws of South Dakota. According to the articles, the object of the corporation was "buying and selling dental supplies and materials and the manufacture of such supplies as the directors may deem profitable; to manufacture or to hire manufactured for this corporation a crown—an artificial tooth crown—patented by B. W. Fordyce, . . . and the selling of such crowns through such avenues of the dental trade as the majority of directors may choose."

The capital stock was fixed at $150,000, divided into shares of $100 each, and the corporation was authorized to purchase of the plaintiff the above-mentioned patent,

and to pay for his valuable services by issuing to him 1,000 shares of the stock, ten shares to M. R. Brant as compensation for his legal services and the remainder of the capital stock might be paid in cash or other form as the board of directors might determine. Sebree was named as resident agent at Pierre on whom service of notice might be made. To him one share of stock was assigned. The three became directors of the company and Fordyce was elected president and Brant secretary. Subsequently, the shares of stock were issued as authorized and Fordyce formally transferred the patent to the company. His services were those of organizing the company and those of Brant the preparation of the articles. The purpose of issuing one share of stock to Sebree was to enable the company to incorporate in South Dakota. The president and secretary then prepared by-laws, and for some reason published them in a newspaper at Bedford. The plaintiff then started out to dispose of his stock. Defendant testified that he represented to him that "on surrender of a fully paid certificate, $100 in dental supplies would be furnished to one holding that certificate, and that there would a certain percent— I do not know the exact amount. I do not know that it was as much as Mr. Crum stated; that it would be deposited in the bank at Bedford, and that would be a guarantee for the stock. I think it was thirty-three and one-third percent. I do not think he said anything about what would be the value of one $100 share. . . . He also stated that it would not be particularly necessary for him to go and sell stock like those, for he could get all the money he wanted to start a dental company, but he was selling the stock to create a basis before he started the company. He did not at that time exhibit any article of stock. He did not show me any literature on which appeared the name of South Dakota. Q. What, if anything, did he say about this corporation being an Iowa corporation, and about being desirous of scattering the stock around in Iowa?

A. He said it was incorporated to do business in Iowa. He did not say it was incorporated in Iowa, therefore I thought it was incorporated in Iowa. . . . Q. Did you believe it was a corporation? A. I did so. Q. Did you believe that from what he told you? A. Yes, sir; I would not have bought the stock in a corporation organized in South Dakota." On cross-examination he testified that plaintiff "did not tell me that this company was incorporated in the state of Iowa. He led me to believe that. I did not ask him where it was incorporated. Q. Why did you not ask him where it was incorporated? A. He said it was incorporated to do business in the state of Iowa. Q. Why didn't you ask him? A. I did not know anything about a corporation." The witness further testified that he did not know that the corporation was incorporated in South Dakota until he saw a certificate of stock in the hands of his brother. "Mr. Fordyce never claimed to me at any time that the Fordyce Dental Company was a state corporation organized under the state of Iowa or had a charter from that state. I never took any pains to find out." In March, 1908, defendant wrote the plaintiff that he had an accident and requested him to cancel the contract. In June, he wrote him again, and in July, 1909, repeating the request, and suggesting that he would pay the costs, but in none of these letters did he suggest unfair dealing on the part of the plaintiff. Fordyce testified that about $12,000 worth of stock taken from that belonging to the corporation had been sold, and that the company began the business of buying and selling dental supplies at retail to dentists February 1, 1910; that the money so received was used to carry on the business, and that it was his design that the money received from the treasury stock should be the working capital of the concern. There was nothing on the letter heads of the company to indicate that it was incorporated under the laws of South Dakota. On the contrary, plaintiff caused a contract for the sale of shares for the

capital stock to be printed with the name of the company as "of Bedford, Iowa, with "incorporated" inclosed in parentheses, and also indicating the change of the name to "Northwestern Dental Supply Company, Des Moines, Iowa." This contract as signed by the parties hereto reads: "Bought of D. W. Fordyce one share of stock in the For- •dyce Crown Dental Company of Bedford, Iowa, for which I agree to pay ten dollars per month for ten months, com- mencing with Feb. 1st., '08.    Certificates to be held by the company as collateral, security until paid.    Upon pres- entation and surrender of fully paid certificates this com- pany will pay to the holder hereof $100 in dental supplies. Any indebtedness of the company shall be a lien against the debtor's stock, and if not paid when due the legal rate of interest will prevail.    The Fordyce Crown & Dental Company of Bedford, Iowa.    B. W. Fordyce, Pres. C. H. Humphrey."

Such was the evidence on which plaintiff necessarily relied, and its recital disposes of all the allegations of the answer save that the note was without consideration, for it appears therefrom that the corporation was organized; that there was no representation as to the actual value of its stock; that under the terms of the contract the share certifi- cate was not to be delivered until paid for; that there were no representations as to the laws under which the corpora- tion was organized, and if the printed matter indicated it to be "of Bedford, Iowa," this was a part of its name. It owned the patent as represented, and there was no evi- dence before the court that the stock was valueless.    True, Bates testified that he had never used the dental crown on which the patent issued because he "didn't like the crown" and "didn't think it was practical," and "never saw any on the market," and "wouldn't want to use one in his busi- ness," and Marker said he would not use it on his patients.

Both witnesses admitted never having used or tested the crown.    It need hardly be added that this testimony

fell far short of proving that the patent was worthless. Moreover, the condition of the contract was that dental supplies to the value of $100 would be delivered upon the surrender of this share of stock, and there was no evidence but that the company was able to and would comply with this obligation. For all that appears, funds received from the sale of the other stock may have been on hand, and if so these would give some value to the stock. Had the sale of the stock been on subscription, the fact of their being a consideration would have been implied. 1 Cook on Corporations, section 71 et seq.

The contract of sale was of stock issued to plaintiff, and though the scheme disclosed in the organization and promotion of the corporation is open to suspicion, the evidence failed to show that the note was without consideration, or that the purpose of organizing the corporation was to defraud subscribers for stock.—*Reversed.*